**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

CASE NO.

TRACFONE WIRELESS, INC.,
a Delaware Corporation,

       Plaintiff,

**(Jury Trial Demanded)**

v.

CELLULAR LINK COMMUNICATION, INC.,
a Florida corporation; SYED T. HUSSAIN a/k/a
SAM HUSSAIN, individually, and, HEATHER
ANN HUSSAIN, individually,

       Defendants.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, TRACFONE WIRELESS, INC. ("TracFone"), a Delaware corporation, sues Defendants CELLULAR LINK COMMUNICATION, INC. ("CELLULAR LINK"), a Florida corporation, SYED T. HUSSAIN a/k/a SAM HUSSAIN ("Syed Hussain"), individually, and HEATHER ANN HUSSAIN, ("Heather Hussain") (referred to collectively as "Defendants") and states:

1.     This is an action for damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees, and injunctive relief arising out of Defendants' unlawful business enterprise that willfully infringes on TracFone's incontestable federal trademarks, copyrights and other rights related to TracFone's prepaid wireless service – which is marketed under the TracFone, NET10, SafeLink, Straight Talk and ⌾ ("spiracle logo") brands – and the wireless telephones that are specially manufactured for TracFone to be used with its wireless service ("TracFone Prepaid Phones" or "Phones").

1

2.     As set forth in greater detail below, Defendants are engaged in unlawful business practices involving the unauthorized and unlawful bulk purchase and resale of TracFone Prepaid Phones, unauthorized and unlawful computer unlocking or reflashing of TracFone Prepaid Phones, alteration of TracFone's copyrighted and proprietary software installed in the Phones, trafficking of the Phones for profit, and other violations of Federal statutory and common law.

## PARTIES

3.     Plaintiff TracFone is a Delaware corporation that maintains its principal place of business in Miami-Dade County, Florida.

4.     Defendant Cellular Link is a Florida corporation with its principal place of business located at 1739 Banks Road, Margate, Florida   33063.   Defendant Hussain is the President of Cellular Link.

5.     Defendant Syed Hussain is an individual and a resident of the State of Florida who resides at 6624 Northwest 99th Avenue, Parkland, Florida   33076 and who has engaged in illicit conduct and business transactions in this District as alleged herein.

6.     Defendant Heather Hussain is an individual and a resident of the State of Florida who resides at 6624 Northwest 99th Avenue, Parkland, Florida   33076 and who has engaged in illicit conduct and business transactions in this District as alleged herein.

6.     All conditions precedent to filing this action have been performed, waived or excused.

7.     TracFone has retained the undersigned attorneys to represent it in this action and has agreed to pay its attorneys a reasonable fee for their services.

16978227.4                                                2

## JURISDICTION AND VENUE

8.      Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§1331, 1338, and 17 U.S.C. §1203 because TracFone's claims for violations of the United States Trademark Act, Title 15 of the United States Code, and United States Copyright Act, Title 17 of the United States Code, arise under federal law.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over TracFone's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

9.      Defendants are subject to the personal jurisdiction of this Court pursuant to (i) FLA. STAT. §48.193(1)(a) because Defendants have conducted, engaged in and carried out a business venture in the State of Florida; (ii) FLA. STAT. §48.193(1)(b) because Defendants have committed tortious acts within this State; and, (iii) FLA. STAT. §48.193(1)(g) because Defendants breached a contract in this State by failing to perform acts required by the contract to be performed in this State.

10.      Defendants are also subject to this Court's personal jurisdiction pursuant to FLA. STAT. §48.193(2) because Defendants have engaged in substantial and not isolated activity within this State.

11.      By virtue of (a) operating, conducting, engaging in, or carrying on a business venture in this state and/or (b) by engaging in substantial and not isolated activity within the State of Florida, those Defendants that may have become non-residents of the State of Florida have accepted the privilege extended by law to non-residents of the State of Florida to operate, conduct, engage in, or carry on a business or business venture in the state, and are thus subject to service of process pursuant to FLA. STAT. §48.181(1).

12.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. §1391(b) and 1400 because Defendants maintain their principal offices and/or reside in this District, TracFone maintains its principal place of business in this District, a significant part of Defendants' misconduct occurred in this District, the impact of Defendants' misconduct occurred in this District, and the Defendants are subject to personal jurisdiction in this District.

13.     Specifically, Defendants' activities include, *inter alia,* purchasing approximately two thousand (2,000) TracFone Prepaid Phones in connection with the Bulk Resale Scheme from Gregory Proskurovsky, proprietor of SP Trading Company ("SP Trading"), a Michigan corporation.  TracFone obtained a Final Judgment and Permanent Injunction from the United States District Court for the Southern District of Florida against SP Trading Company and its principals based upon factual and legal claims substantively similar to those raised herein.  *See* **Composite Exhibit "D."**

14.     Defendants' activities also include the purchasing of ninety-nine (99) TracFone Prepaid phones in connection with the Bulk Resale Scheme from Platform Enterprises, Inc. ("Platform"), a California corporation, another entity against whom TracFone obtained a Final Judgment and Permanent Injunction based upon factual and legal claims substantively similar to those raised herein. *See* **Composite Exhibit "D."**

### BACKGROUND

15.     This is an action for damages and injunctive relief arising out of Defendants' unlawful business enterprises that willfully infringe on TracFone's incontestable trademarks, copyrights and other rights related to TracFone's prepaid wireless service marketed under the TracFone, NET10, SafeLink, and Straight Talk brands—several of which bear the spiracle logo—("TracFone's Prepaid Wireless Service,") and TracFone Prepaid Phones designed for use exclusively in the United States, Puerto Rico, and U.S. Virgin Islands with TracFone's Prepaid Wireless Service.

16.     As set forth in greater detail below, Defendants are engaged in, and knowingly facilitate and encourage others to engage in, unlawful business practices involving the unauthorized and unlawful bulk purchase and resale of TracFone Prepaid Phones, unauthorized and unlawful computer unlocking or reflashing of TracFone Prepaid Phones, alteration of TracFone's copyrighted and proprietary software computer code installed in the Phones, and trafficking of the Phones for profit (the "Bulk Resale Scheme").

17.     Defendants and/or their co-conspirators perpetrate their Bulk Resale Scheme by, among other things, acquiring bulk quantities of TracFone Prepaid Phones from internet sites and retail stores such as Wal-Mart, Target or Sam's Club, and by soliciting others ("Runners") to purchase TracFone Prepaid Phones in bulk for the benefit of the Defendants.

18.     Defendants and/or their co-conspirators then remove the TracFone Prepaid Phones' original packaging and ship them overseas.

19.     Defendants and/or their co-conspirators acquire the TracFone Prepaid Phones with the knowledge and intent that the Phones will not be activated for use on the TracFone Prepaid wireless networks.  Instead, the Phones are computer-hacked.

20.     The process of computer hacking or "unlocking" or "reflashing" TracFone Prepaid Phones involves circumventing the electronic protections installed in the handset, and then erasing, removing and/or disabling TracFone's copyrighted and proprietary software installed in the Phones.  Once a TracFone Prepaid Phone has been unlocked or reflashed, it is no longer operable within TracFone's prepaid wireless virtual network, and is operable on other cellular networks.  When that occurs, TracFone no longer has a revenue source to recoup the invested subsidy it invested on that Phone with the expectation that it would be used by a legitimate consumer.

21. The reflashed Phones are then trafficked and resold, at a premium, as new, under TracFone's trademarks.

22. Defendants are not, and have never been, an authorized retailer or distributor of TracFone Prepaid Phones.

23. In an effort to prevent these unlawful business practices, TracFone retailers have implemented policies limiting the number of TracFone Prepaid Phones an individual may purchase on a daily basis.

24. Defendants hired Runners and took other steps to circumvent these sales limitation policies in perpetrating their Bulk Resale Scheme.

25. Defendants' conduct, together with that of currently unknown civil and criminal co-conspirators, is causing TracFone to suffer millions of dollars in losses and has caused immediate and irreparable injury to TracFone.

## TRACFONE'S BUSINESS MODEL

26. TracFone is the largest provider of prepaid wireless telephone service in the United States, and markets its service under the TracFone, NET10, SafeLink, Straight Talk brands and the spiracle logo. TracFone's service enables its customers to prepay for their wireless service by purchasing TracFone airtime cards or prepaid plans and specially manufactured wireless Phones. Some of TracFone's products allow customers to load airtime into their TracFone Prepaid Phones using codes generated from PIN numbers found on the airtime cards, or via TracFone's website. Some TracFone products allow customers to prepay on a monthly basis for a specified amount of usage or for unlimited usage. Many TracFone Prepaid Phones and airtime cards are sold through major national retailers such as Wal-Mart, Target, and Sam's Club, and are also sold online. TracFone's SafeLink Wireless service is an FCC Lifeline program that provides free TracFone Prepaid Phones and airtime to qualified low income consumers.

27.     TracFone is considered a "Mobile Virtual Network Operator" or "MVNO" in the wireless industry.  The company is not a facilities-based wireless provider like AT&T, Verizon, T-Mobile or Sprint/Nextel.  Rather, TracFone contracts with facilities-based wireless providers to purchase airtime on their networks for use by TracFone's customers.

28.     TracFone's business model is based upon TracFone's ability to deliver an affordable product to its consumers.  Therefore, TracFone subsidizes its customers' acquisition of the TracFone Prepaid Phones by selling its Phones for substantially less than the Phones cost TracFone.  TracFone recoups this subsidy through profits earned on the sale of the TracFone prepaid airtime cards that are required to make and receive calls on the TracFone Prepaid Phones.  TracFone is able to offer its Phones at affordable prices only if the Phones are used as intended with the TracFone Prepaid Wireless Service.

29.     Manufacturers that produce wireless phones for TracFone install special proprietary prepaid software, developed, copyrighted, and owned by TracFone ("TracFone Prepaid Software"), into the TracFone Prepaid Phones.  The TracFone Prepaid Software prevents TracFone Prepaid Phones from being used without loading airtime minutes from a TracFone Prepaid airtime card.

### TRACFONE'S FEDERALLY PROTECTED RIGHTS

30.     TracFone is one of the oldest and leading providers of prepaid wireless telecommunications services in the United States.  TracFone has used, and continues to use, trademarks in commerce including the marks TracFone, NET10, SafeLink, Straight Talk and its spiracle logo.   In particular, TracFone owns and has also used the registered trademarks identified below:

a.      Incontestable United States Trademark Registration No. 2,114,692 for TracFone, used in connection with: (1) electronic communications equipment, namely, cellular telephones, prepaid airtime cellular telephones and cellular telephone accessories, namely, prepaid airtime debit cards, battery chargers, stands, antennae, voice amplifiers and microphones; computer programs for use in controlling and monitoring prepaid airtime cellular telephone service, in International Class 9; (2) providing cellular telephone services and providing monitoring and control services for use in conjunction with prepaid airtime cellular phones and debit cards, in International Class 38; and (3) wholesale distributorship featuring of cellular telephones, prepaid airtime cellular telephones and prepaid airtime debit cards, and software for controlling and monitoring prepaid airtime cellular service, in International Class 42, issued on November 18, 1997 and based on a first use date of June 30, 1996;

b.      United States Trademark Registration No. 3,224,929 for TracFone Nationwide Prepaid Wireless and Design, used in connection with electronic communications equipment, namely, cellular telephones; prepaid air time cellular telephones; cellular telephone accessories, namely, battery chargers, stands, antennae, headset kits comprised of hands free electronic earpiece with microphone and holster, hands free headsets, cases with flaps, power adapters, batteries, carry sleeves, face plates, belt clips, holsters, mounting attachments, in International Class 9, issued on April 3, 2007 and based on a first use date of December 31, 2005;

c.      United States Trademark Registration No. 3,222,623 for TracFone Nationwide Prepaid Wireless and Design, used in connection with distributorship services featuring cellular telephones, prepaid air time cellular telephone and prepaid air time debit cards, and software for controlling and monitoring prepaid air time cellular service, in International Class 35, issued on March 27, 2007 and based on a first use date of December 31, 2005;

      d.     United States Trademark Registration No. 3,118,250 for NET10, used in connection with: (1) monitoring the use of debit cards, in International Class 36; and (2) providing monitoring and control services for use in conjunction with prepaid air time cellular and mobile phones, in International Class 38, issued on July 18, 2006 and based on a first use date of March 1, 2005;

      e.     United States Trademark Registration No. 3,255,754 for NET10 Pay As You Go Made Simple and Design, used in connection with cellular telephone communications services provided via prepaid air time cellular telephones and prepaid air time cellular calling card services, in International Class 38, issued on June 26, 2007 and based on a first use date of December 31, 2005;

      f.     United States Trademark Registration No. 3,253,506 for NET10 Pay As You Go Made Simple and Design, used in connection with electronic communications equipment, namely, cellular telephones; prepaid air time cellular telephones; cellular telephone accessories, namely, telephone battery chargers, telephone battery charger stands, telephone antennae, headset kits comprised of hands free electronic earpiece with microphone and holster specially adapted for cell phones, hands free headsets comprising head-phones and a microphone, cases with flaps specially adapted for cell phones, power adapters, batteries, carry sleeves specially adapted for cell phones, decorative cell phone face plates, belt clips, holsters, and mounting attachments specially adapted for carrying cell phones, in International Class 9, issued on June 19, 2007 and based on a first use date of December 31, 2005;

      g.     United States Trademark Registration No. 3,251,389 for NET10 Pay As You Go Made Simple and Design, used in connection with distributorship services featuring cellular telephones, prepaid air time cellular telephones and prepaid air time debit cards, and software for controlling and monitoring prepaid air time cellular service, in International Class 35, issued on June 12, 2007 and based on a first use date of December 31, 2005; and,

h.      United States Trademark Registration No. 3,752,933 for SafeLink Wireless, used in connection with: (1) prepaid telecommunications cellular telephone calling card services, in International Class 36; and (2) cellular telephone communications services; cellular telephone telecommunications services provided via prepaid air time cellular telephones; cellular telephone telecommunications services provided via prepaid air time telephone calling cards in International Class 38, issued on February 23, 2010 and based on a first use date of August 1, 2008.

i.      United States Trademark Registration No. 3,630,321 for SafeLink Wireless and Design, used in connection with cellular telephone communications services; cellular telephone telecommunications services provided via prepaid air time cellular telephones and prepaid air time cellular telephone calling card services, in International Class 38, issued on June 2, 2009 and based on a first use date of September 12, 2008.

j.      United States Trademark Registration Nos. 3,794,491, 3,788,435, and 3,788,436 for Straight Talk, used in connection with: (1) electronic communications equipment, namely, cellular telephones; prepaid air time cellular telephones; cellular telephone accessories, namely, battery chargers, stands, antennae, headset kits comprised of hands free electronic earpiece with microphone and holster, hands free headsets, cases with flaps, power adapters, batteries, carry sleeves, face plates, belt clips, holsters, mounting attachments, in International Class 9; (2) on-line retail store services featuring cellular telephones, pre-paid wireless air time cards, cellular telephone accessories and wireless services; distributorship services featuring cellular telephones, prepaid air time cellular telephone and prepaid air time debit cards, and software for controlling and monitoring prepaid air time cellular service, in International Class 35; and (3) cellular telephone communications services; cellular telephone telecommunications services provided via prepaid air time cellular telephones and via prepaid cellular telephone calling cards, in International Class 38, issued on May 25, 2010, May 11, 2010, and May 11, 2010, respectively and all based on a first use date of June 1, 2009.

k.      United States Trademark Registration Nos. 3,794,595 and 3,791,253 for Straight Talk and Design, used in connection with: (1) electronic communications equipment, namely, cellular telephones; prepaid air time cellular telephones; cellular telephone accessories, namely, battery chargers, stands, antennae, headset kits comprised of hands free electronic earpiece with microphone and holster, hands free headsets, cases with flaps, power adapters, batteries, carry sleeves, face plates, belt clips, holsters, mounting attachments, in International Class 9; and (2) on-line retail store services featuring cellular telephones, pre-paid wireless air time cards, cellular telephone accessories and wireless services; distributorship services featuring cellular telephones, prepaid air time cellular telephone and prepaid air time debit cards, and software for controlling and monitoring prepaid air time cellular service, in International Class 35, issued on May 25, 2010 and May 18, 2010, respectively, and based on a first use date of June 1, 2009.

l.      Incontestable United States Trademark Registration No. 2,786,917 for the Spiracle logo, used in connection with: (1) electronic communications equipment, namely, cellular telephones, prepaid air time cellular telephones and cellular telephone accessories, namely, prepaid air time magnetic debit cards, battery chargers, stands, antennae, voice amplifiers and microphones; computer programs for use in controlling and monitoring prepaid air time cellular telephone services, in International Class 9; (2) non-magnetic prepaid air time debit cards, in International Class 16; and (3) providing cellular telephone services and providing monitoring and control services for use in conjunction with prepaid air time cellular phones and debit cards, in International Class 38, issued on November 25, 2003 and based on a first use date of March 1999.

31.    TracFone's aforementioned marks (the "Marks") constitute the lawful, valued, subsisting and exclusive property of TracFone, and as a result of the high quality of TracFone's products, services, sales, promotion and advertising thereof, the marks have become an intrinsic and essential part of the valuable goodwill and property of TracFone, and are well known and established to customers and the trade as symbols identifying and distinguishing TracFone's products and services, and signifying distinctive services of exceptional quality.  True copies of the certificates of registration issued by the United States Patent and Trademark Office for the Marks are attached as **Composite Exhibit "A."**

32.    Only TracFone and its affiliates are allowed to use TracFone's Marks. Defendants are not affiliated with TracFone and, therefore, cannot use TracFone's trademarks.

33.    TracFone owns a valid copyright registration, TX 6-515-894, on the TracFone Prepaid Software.  A copy of the certificate of registration is attached as **Exhibit "B."**  Pursuant to the copyright application, the software was created in 2002 and first used in commerce on January 1, 2003.  *Id.* The application for registration was filed with the Library of Congress on September 15, 2006.

### TERMS AND CONDITIONS REGARDING
### THE USE OF TRACFONE PREPAID PHONES

34.    TracFone Prepaid Phones are sold subject to terms and conditions ("Terms and Conditions") which conspicuously restrict and limit the sale and use of the Phones.  These Terms and Conditions are set forth in printed inserts that are included in the packaging with every TracFone Phone, and are also available to the public on TracFone's website.  They are also referenced in printed warnings that are placed on the outside of the retail packaging of the Phones.  The Terms and Conditions and language on the packaging constitute a valid binding contract.

35.    The retail packaging in which new TracFone Prepaid Phones are sold contains the following language that is conspicuously printed in all capital letters in a red banner on the outside of the package:

> THIS TRACFONE HANDSET IS SOLD EXCLUSIVELY FOR USE WITH TRACFONE PREPAID WIRELESS SERVICE.  YOU AGREE NOT TO TAMPER WITH OR ALTER THE SOFTWARE OR HARDWARE IN THIS PHONE, OR ASSIST OTHERS IN SUCH ACTS, OR TO EXPORT TRACFONE HANDSETS OUTSIDE OF THE UNITED STATES.  THESE ACTS VIOLATE TRACFONE'S RIGHTS AND COULD VIOLATE STATE AND FEDERAL LAWS. TRACFONE WILL PROSECUTE VIOLATORS TO THE FULL EXTENT OF THE LAW.  BY PURCHASING OR OPENING THIS PACKAGE, YOU ARE AGREEING TO THESE TERMS AND THE TERMS AND CONDITIONS OF SERVICE IN THE ENCLOSED USER GUIDE (AND AVAILABLE AT WWW.TRACFONE.COM).

36.    Packaging for TracFone's Net10; SafeLink; and Straight Talk branded handsets, including those bearing the spiracle logo, have similar conspicuous notifications that inform purchasers that they are bound by the Terms and Conditions.

37.    The Terms and Conditions included in the TracFone handset packaging also provide, in pertinent part, as follows:

**UNAUTHORIZED USAGE; TAMPERING**.

The TRACFONE handset is sold exclusively for use by you, the end consumer, with the TRACFONE prepaid wireless Service available solely in the United States, Puerto Rico and the U.S. Virgin Islands. Any other use of your TRACFONE handset, including without limitation, any resale, unlocking and/or reflashing of the handset is unauthorized and constitutes a violation of your agreement with TracFone Wireless. You agree not to unlock, reflash, tamper with or alter your TRACFONE or its software, enter unauthorized PIN numbers, engage in any other unauthorized or illegal use of your TRACFONE or the Service, or assist others in such acts, or to sell and/or export TRACFONE handsets outside of the United States. These acts violate TRACFONE's rights and state and federal laws. Improper, illegal or unauthorized use of your TRACFONE is a violation of this agreement and may result in immediate discontinuation of Service and legal action.  TRACFONE will prosecute violators to the full extent of

the law. You agree that any violation of this agreement through your improper, illegal or unauthorized use or sale of your TRACFONE shall entitle TracFone Wireless to recover liquidated damages from you in an amount not less than $5,000 per TRACFONE handset purchased, sold, acquired or used in violation of this agreement.

38.     The terms and conditions for TracFone's other brands – Net 10; SafeLink; and Straight Talk (including those handsets bearing the spiracle logo) – each contain virtually identical language; in relevant part.

39.     The restrictions and limitations in the Terms and Conditions and on the packaging are intended to restrict the use of TracFone Prepaid Phones solely to TracFone Prepaid Wireless Service.

40.     TracFone Prepaid Phones may access TracFone Prepaid Wireless Service only within the United States, the U.S. Virgin Islands and Puerto Rico (the "Coverage Area").

41.     TracFone Prepaid Phones cannot access any wireless network outside of the Coverage Area unless the TracFone Prepaid Software is unlawfully removed or altered.

## DEFENDANTS' MISCONDUCT

42.     TracFone has discovered that, although large quantities of its Phones are being purchased at retailers throughout the United States, a significant number of these Phones are not being activated for use on the TracFone Prepaid Wireless System.

43.     Instead, entities and individuals such as Defendants are purchasing and selling TracFone Prepaid Phones in bulk quantities for use outside of the TracFone Prepaid Wireless Service and Coverage Area.  The Phones are removed from their original packaging, shipped overseas, and "unlocked" or "reflashed."  Defendants' actions are not for the sole purpose of lawfully connecting to a wireless telephone communication network.

44.    The process of unlocking or reflashing TracFone Prepaid Phones involves circumventing the electronic protections installed in the handset, and then erasing, removing and/or disabling the TracFone Prepaid Software.

45.    Once a TracFone Prepaid Phone has been unlocked or reflashed, it is no longer operable on TracFone Prepaid Wireless Service, and could be further modified so as to become operable on other cellular networks.  Once this occurs, TracFone no longer has a revenue source to recoup the invested subsidy on that Phone.

46.    Defendants knowingly and willfully engaged in an enterprise that traffics in and resells unlocked or reflashed TracFone Prepaid Phones, or TracFone Prepaid Phones that they know, or reasonably should know, will be subsequently unlocked or reflashed and then resold under the Marks outside the Coverage Area as new for a substantial profit.

47.    Defendants' phones appear virtually identical to unaltered TracFone Prepaid Phones and have the same trademarks as used by TracFone on its unaltered and genuine Phones.

48.    Defendants' phones are sold through internet retail outlets and appear to the customer as an authentic TracFone.  Although TracFone's advertising is much more extensive than Defendants', Defendants, just like TracFone, advertise on the internet.

49.    The parties sell virtually identical looking, directly competing products to the same purchasers through the same channels of trade utilizing the same advertising vehicles.

50.    Unless unlocked or reflashed, the TracFone Prepaid Phones are inoperable as wireless telecommunications devices outside the Coverage Area.

51.    The Coverage Area is plainly disclosed in TracFone's packaging and in the Terms and Conditions.  There would be no reason to ship TracFone Prepaid Phones overseas unless they were intended to be unlawfully unlocked or reflashed.

52.    Defendants have purchased thousands of TracFone Prepaid Phones from a number of known bulk resellers and dealers.

53.    Defendants have purchased and/or sold thousands of TracFone Prepaid Phones from several known bulk resellers of TracFone Prepaid Phones against whom TracFone obtained Final Judgments and Permanent Injunctions.

54.    By way of example, Defendants have engaged in the following business transactions:

    a.    on or about January 8, 2008, Defendants purchased approximately 2,000 TracFone Prepaid Phones from SP Trading.

    b.    on or about December 18, 2007, Defendants purchased approximately 99 TracFone Prepaid Phones from Platform Enterprises.  (*See generally* **Composite Exhibit "C"**).

55.    Upon information and belief, Defendants and/or their co-conspirators have also actively solicited Runners to purchase large quantities of TracFone Prepaid Phones from Target, Wal-Mart, Best Buy, and other retailers, for sale to Defendants.

56.    The active solicitation of Runners by Defendants and/or their co-conspirators includes contacting Runners and requesting that they obtain specific brands and models of TracFone Prepaid Phones.

57.    To further the Bulk Resale Scheme, Defendants and Runners, among other things, conspire and work in concert to circumvent retailers' policies limiting the number of TracFone Prepaid Phones an individual may purchase.

58.    Defendants and Runners are often able to buy the Phones without paying State or other taxes associated with the purchase because of the large volume of Phones they purchase.

59.     An agreement and conspiracy existed and continues to exist between and among Defendants and other co-conspirators, to unlawfully bulk purchase, traffic and resell unlawfully reflashed and counterfeit TracFone Prepaid Phones under the Marks.

60.     Defendants knowingly agreed to engage, and did engage, in one or more overt acts in furtherance of the conspiracy as set forth with more particularity in this Complaint.

61.     TracFone has been proximately damaged by the conspiracy and Defendants' actions in furtherance of the conspiracy.

## SUBSTANTIAL HARM CAUSED BY DEFENDANTS' MISCONDUCT

62.     Defendants' actions substantially harm TracFone by depriving TracFone of the opportunity to recoup its losses on the sale of its TracFone Prepaid Phones and to earn profits by providing wireless service to legitimate TracFone consumers.

63.     Since Defendants often removed the Phones from their original packaging, removed the warranty information and/or shipped the Phones outside the United States, it does not carry TracFone's manufacturer's warranty.  Accordingly, Defendants' actions invalidate the warranty associated with TracFone Prepaid Phones in its entirety.  Thus, TracFone Prepaid Phones differ materially from the genuine TracFone Prepaid Phones sold by authorized TracFone retailers, all of which carry a manufacturer's warranty.

64.     In addition, removing the Phones from the original packaging, selling the handsets in packaging that is not approved by TracFone, and altering the software irreparably harms TracFone because it deprives TracFone of the means to control the quality of its product.

65.     The conduct of Defendants, their unknown co-conspirators, and others who engage in the unlawful bulk purchasing, reflashing, and sale of reflashed and altered TracFone Prepaid Phones has also resulted in a shortage of available TracFone Prepaid Phones, thereby

substantially harming TracFone and its relationship with retailers and consumers because TracFone is not able to supply retailers with sufficient handsets to satisfy the demand from legitimate consumers.   As a result, TracFone loses potential customers to competing wireless service providers.

66.   Defendants' actions substantially harm TracFone and consumers who ultimately purchase TracFone handsets that have been improperly reflashed.   These reflashed TracFone Prepaid Phones will not work as intended.   Purchasers of these reflashed phones are unable to access TracFone Prepaid Wireless Service.   Consumers of the reflashed phones are misled as to the source, sponsorship and origin of their reflashed wireless phone.

67.   The process of reflashing or unlocking a TracFone Prepaid Phone voids the manufacturer's warranty on the device.   In addition, the sale of a TracFone Prepaid Phone outside of the United States also voids the manufacturer's warranty.   Both consumers and TracFone are harmed when a TracFone Prepaid Phone that has been altered or sold outside of this country by Defendants or their co-conspirators is submitted for warranty repair.   Because the warranty is voided on reflashed Phones or Phones sold abroad, consumers who purchase Phones from Defendants or their co-conspirators are unable to obtain warranty service in the event they experience problems with their Phones.   As a result, TracFone's reputation suffers further.

68.   Defendants' conduct has also resulted in the dilution of TracFone's trademarks, substantial harm to TracFone's business reputation and goodwill and a greater likelihood of confusion, mistake and deception as to the source of origin of TracFone products unlawfully sold by Defendants and as to the relationship between TracFone and Defendants.

## CIVIL PROCEEDINGS IN OTHER FEDERAL COURTS

69.   Federal courts have recognized that conduct similar or identical to Defendants' violates existing civil laws.

70.     TracFone has filed various independent lawsuits in the United States District Courts for the Southern District of Florida, the Middle District of Florida, the Northern District of Texas, the Southern District of Texas, the Eastern District of New York, the Central District of California, the Western District of Pennsylvania, and the Northern District of Georgia against other defendants similarly engaged in the practice of defrauding legitimate consumers and TracFone, by bulk purchasing prepaid wireless telephones and reflashing, repackaging, and reselling the counterfeit prepaid wireless phones for profit.  Other wireless service providers, including AT&T, T-Mobile USA, IDT, and Virgin Mobile have also filed similar lawsuits, as have wireless handset manufacturers Nokia and Motorola.

71.     TracFone, AT&T, T-Mobile, Virgin Mobile, IDT, Motorola and Nokia have all obtained Final Judgments and Permanent Injunctions in these cases, sample copies of which are attached as **Composite Exhibit "D."**

<u>COUNT ONE</u>
**FEDERAL TRADEMARK INFRINGEMENT**

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 68, as though fully set forth herein.

72.     Defendants' and/or their co-conspirators' aforementioned conduct constitutes use of the Marks without authorization in connection with their conspiracy to sell and offer for sale reflashed and counterfeit TracFone Prepaid Phones, which downstream customers will discover are not capable for use with the TracFone prepaid wireless service.

73.     Defendants' and/or their co-conspirators' use of the Marks in connection with the sale of reflashed and counterfeit TracFone Prepaid Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' counterfeit products, and the relationship between TracFone and Defendants.

74.    Defendants' and/or their co-conspirators' unauthorized use of the Marks is likely to continue in the future, all to the great and irreparable damage to the business, reputation and goodwill of TracFone.

75.    Defendants' and/or their co-conspirators' use and sale of the Marks in connection with the reflashed and counterfeit TracFone Phones, which are no longer capable of use with the TracFone prepaid wireless service constitutes a misappropriation of TracFone's distinguishing and identifying Marks that were created as a result of effort and expense by TracFone over a long period of time.  Defendants' and/or their co-conspirators' use of the Marks evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendants have some connection, association, or affiliation with TracFone, and thus constitutes false designation of origin.

76.    Defendants, in committing the foregoing acts in commerce, have damaged, and will continue to damage, TracFone and the reputation and goodwill of TracFone, and has been unjustly enriched and will continue to unjustly enrich itself at the expense of TracFone. TracFone is without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendants are enjoined from committing and continuing to commit such acts.

77.    Defendants' aforesaid acts constitute willful infringement of TracFone's federally registered trademarks in violation of 15 U.S.C. §1114.

## COUNT TWO
## FEDERAL UNFAIR COMPETITION

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 68, as though fully set forth herein.

78.    Defendants' and/or their co-conspirators' aforementioned conduct constitutes use of TracFone's Marks without authorization in connection with their conspiracy to sell and offer for sale reflashed and counterfeit TracFone Prepaid Phones, which downstream customers will discover are not capable for use with the TracFone prepaid wireless service.

79.     Defendants' and/or their co-conspirators' use of the Marks in connection with the sale of reflashed and counterfeit TracFone Prepaid Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' counterfeit products, and the relationship between TracFone and Defendants.

80.     Defendants' and/or their co-conspirators' unauthorized use of the Marks are likely to continue in the future, all to the great and irreparable damage to the business, reputation and goodwill of TracFone.

81.     Defendants' and/or their co-conspirators' use and sale of the Marks in connection with the reflashed and counterfeit TracFone Phones, which are no longer capable of use with the TracFone prepaid wireless service constitutes a misappropriation of TracFone's distinguishing and identifying Marks that were created as a result of effort and expense by TracFone over a long period of time.  Defendants' and/or their co-conspirators' use of the Marks evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendants have some connection, association, or affiliation with TracFone, and thus constitutes false designation of origin.

82.     Defendants, in committing the foregoing acts in commerce, have damaged, and will continue to damage, TracFone and the reputation and goodwill of TracFone, and have unjustly enriched and will continue to unjustly enrich his or herself or itself at the expense of TracFone.  TracFone is without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendants are enjoined from committing and continuing to commit such acts.

83.     Defendants' aforesaid acts constitute willful infringement of TracFone's Marks in violation of 15 U.S.C. §1125(a).

## COUNT THREE
## BREACH OF CONTRACT

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 68, as though fully set forth herein.

84.     By purchasing TracFone Prepaid Phones, Defendants acknowledged and agreed to the Terms and Conditions included with each Phone as conspicuously printed on the package and as contained in the printed inserts packaged with the Phones.

85.     The Terms and Conditions constitute a valid binding contract between TracFone and Defendants.

86.     TracFone has performed or tendered performance in accordance therewith.

87.     Defendants have breached the Terms and Conditions by, inter alia, purchasing TracFone Prepaid Phones with the specific intent to reflash or unlock the phones or ship the phones outside of the United States.

88.     TracFone has suffered damages as a result of Defendants' breach of the Terms and Conditions.

## COUNT FOUR
## CONTRIBUTORY TRADEMARK INFRINGEMENT

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 68, as though fully set forth herein.

89.     By misappropriating and using the Marks in connection with the Bulk Resale Scheme, Defendants knowingly aided and enabled distributors and/or sellers of its products to market them to members of the general public in a way that infringes the Marks by placing in the hands of distributors and/or sellers an instrument of consumer deception.

90.     Defendants' unlawful, unauthorized, and unlicensed sale of the reflashed or unlocked TracFone Prepaid Phones has thus contributed to the creation of express and implied misrepresentations that the TracFone Prepaid Phones, as sold by Defendants, were created, authorized, or approved by TracFone, and may be used with TracFone's prepaid wireless service.

91.     Upon information and belief, Defendants' conduct has led to post-sale confusion by causing consumers who purchase TracFone Prepaid Phones altered by Defendants to believe that they are purchasing handsets with software licensed or approved by TracFone.

92.     Defendants' conduct constitutes contributory infringement in violation of the Trademark Act.  Defendants' conduct is intentional, malicious and willful.

93.     TracFone has suffered substantial damages as a result of Defendants' contributory infringement.

## COUNT FIVE
### COPYRIGHT INFRINGEMENT OF THE PREPAID SOFTWARE

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 68, as though fully set forth herein.

94.     TracFone has the exclusive right to reproduce and prepare derivative works of its federally copyrighted TracFone Prepaid Software pursuant to 17 U.S.C. §106.

95.     Defendants' and/or their co-conspirators' actions in reflashing or otherwise modifying the federally copyrighted TracFone Prepaid Software, without TracFone's authority or consent, create an unauthorized derivate work of the TracFone Prepaid Software.

96.     Defendants' and/or their co-conspirators' actions in improperly reflashing the federally copyrighted TracFone Prepaid Software, without TracFone's authority or consent, create an unauthorized reproduction of the TracFone Prepaid Software.

97.     Defendants knew or should have known their conduct constituted copyright infringement under Title 17 of the United States Code.

98.     Defendants' actions have damaged and will continue to irreparably injure TracFone unless Defendants' conduct is enjoined by this Court.

## COUNT SIX
## CIRCUMVENTION OF COPYRIGHTED SOFTWARE PROTECTION SYSTEM

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 68, as though fully set forth herein.

99.     The TracFone Prepaid Software contains technological measures that in the ordinary course of the measures' operation require the application of information, or a process or a treatment, with TracFone's authority, to gain access to the proprietary software, as set forth in 17 U.S.C. §1201.

100.    The TracFone Prepaid Software contains technological measures that effectively control access to the proprietary software.

101.    TracFone did not give Defendants or their co-conspirators authority to reflash, unlock, or otherwise to avoid, bypass, remove, disable, deactivate, or impair the technological measures for effectively controlling access to and operation of the TracFone Prepaid Software.

102.    TracFone did not grant Defendants or their co-conspirators the authority to circumvent the technological measures for effectively controlling access to the TracFone Prepaid Software.

103.    Defendants acted, and/or knowingly engaged in a conspiracy, to avoid, bypass, remove, disable, deactivate, or impair a technological measure for effectively controlling access to the proprietary software without TracFone's authority.

104.   Defendants engaged in this misconduct for the purpose of reselling the altered devices for a profit, and not for the sole purpose of lawfully connecting to a wireless telephone communication network.

105.   Defendants acted to, and/or knowingly engaged in, a conspiracy designed to circumvent a technological measure that effectively controls access to the TracFone Prepaid Software that is protected under title 17 of the United States Code, and thereby violated 17 U.S.C. §1201.

106.   Defendants' conduct has caused and, unless restrained, will continue to cause TracFone severe, immediate, and irreparable injury and damages for which TracFone has no adequate remedy at law.   TracFone is entitled to injunctive relief restraining such conduct, an award of damages, including punitive damages, as well as other equitable and legal relief.

## COUNT SEVEN
## TRAFFICKING IN CIRCUMVENTION TECHNOLOGY

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 68, as though fully set forth herein.

107.   Defendants are knowingly facilitating co-conspirators who are in possession of certain instrumentalities that avoid, bypass, remove, disable, deactivate, or otherwise impair the technological measures within the TracFone Prepaid Software that effectively control access to the proprietary TracFone Prepaid Software.

108.   Defendants are knowingly facilitating co-conspirators who are trafficking in the service of circumventing the technological measures that protect the TracFone Prepaid Software from alteration or modification.

109.     Individuals purchasing altered phones from Defendants or their co-conspirators purchase both the TracFone Prepaid Phone and the service of circumventing the technological measures that protect the TracFone Prepaid Software from alteration or modification provided by Defendants or their co-conspirators.

110.     Accordingly, Defendants are knowingly facilitating co-conspirators who are, trafficking in the service of circumventing TracFone's technological measures that effectively control access to TracFone's Prepaid Software by offering to the public its alteration service for a fee.

111.     The service of altering the TracFone Prepaid Software in TracFone Prepaid Phones is primarily designed or produced for the purpose of circumventing TracFone's technological measures that effectively control access to TracFone's Prepaid Software that is protected under title 17 of the United States Code.

112.     Accordingly, Defendants have violated, and continue to violate, Section 1201 of the Copyright Act and, as a result, TracFone has been irreparably injured and will continue to be irreparably injured unless the violating activities of Defendants are enjoined by this Court.

113.     The service of altering the TracFone Prepaid Software has, at most, only a limited commercially significant purpose or use other than circumventing TracFone's technological measures that effectively control access to TracFone's Prepaid Software that is protected under title 17 of the United States Code.

114.     Therefore, Defendants have violated, and continue to violate, Section 1201 of the Copyright Act and, as a result, TracFone has been irreparably injured and will continue to be irreparably injured unless the violating activities of Defendants are enjoined by this Court.

### COUNT EIGHT
### CONSPIRACY TO INDUCE BREACH OF CONTRACT

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 68, as though fully set forth herein:

115.   TracFone had valid and existing contracts with Runners and other original purchasers of the Phones ("Purchasers").

116.   Defendants had knowledge of the contracts between TracFone and Purchasers, and intended to, and in fact did, induce Purchasers to breach their contracts with TracFone.

117.   The breach of the contracts was proximately caused by Defendants' misconduct.

118.   TracFone suffered damages as a result.

### COUNT NINE
### TORTIOUS INTERFERENCE WITH A CONTRACTUAL
### RIGHT IN VIOLATION OF FLORIDA COMMON LAW

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 68, as though fully set forth herein.

119.   Runners who purchased TracFone Phones that were ultimately sold to Defendants entered into a valid, binding contract with TracFone pursuant to the Terms and Conditions set forth on the packaging of the handset.

120.   In accordance with the Terms and Conditions, the original purchasers of the Phones (the Runners) agreed that the Phones would be used in the United States, that the TracFone Prepaid Software would not be hacked or otherwise altered, and that the Phones would be used exclusively with TracFone prepaid wireless airtime cards.

121.   Defendants' actions complained of herein were made with full knowledge and awareness of the contractual provisions regarding the use of and tampering with the Phones.

16978227.4

122.   Defendants have, without legitimate justification, engaged in intentional, improper acts, in violation of the law, which were designed to induce a breach or disruption of the contractual relationships between TracFone and the Runners.

123.   TracFone has been proximately damaged and continues to be damaged as a result of Defendants' interference.

124.   Defendants' conduct constitutes interference with contract.

125.   Defendants' conduct was intentional, malicious, and willful, such that an award of punitive damages is appropriate.

<u>**COUNT NINE**</u>
**CONSPIRACY TO INDUCE BREACH OF CONTRACT**

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 68, as though fully set forth herein:

126.   TracFone had valid and existing contracts with Runners and other original purchasers of the Phones ("Purchasers").

127.   Defendants had knowledge of the contracts between TracFone and Purchasers, and intended to, and in fact did, induce Purchasers to breach their contracts with TracFone.

128.   The breach of the contracts was proximately caused by Defendants' misconduct.

129.   TracFone suffered damages as a result.

<u>**COUNT TEN**</u>
**CIVIL CONSPIRACY IN VIOLATION OF FLORIDA COMMON LAW**

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 68, as though fully set forth herein.

130.   An agreement and conspiracy existed and continues to exist between and among Defendants and other co-conspirators, to unlawfully bulk purchase, traffic and resell unlawfully reflashed and counterfeit TracFone Prepaid Phones under the Marks.

131.   Defendants knowingly agreed to engage, and did engage, in one or more overt acts in furtherance of the conspiracy as set forth with more particularity in this Complaint.

132.   TracFone has been proximately damaged by the conspiracy and Defendants' actions in furtherance of the conspiracy.

**COUNT ELEVEN**
**UNJUST ENRICHMENT IN VIOLATION OF FLORIDA COMMON LAW**

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 68, as though fully set forth herein.

133.   By bulk purchasing the TracFone Prepaid Phones below the manufacturers' cost of the phones, Defendants obtained benefits from TracFone that has resulted in significant financial benefits to Defendants through its resale of the bulk purchased TracFone Prepaid Phones.

134.   Defendants acquired the benefits voluntarily and with full knowledge.

135.   Defendants have retained the benefits under such circumstances that make it unjust and inequitable for Defendants to retain the benefits without paying TracFone the value of the benefits Defendants acquired.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, TracFone Wireless, Inc., a Delaware corporation, respectfully requests that this Court enter final judgment and permanent injunctive relief in favor of TracFone and against Defendants Cellular Link Communication, Inc., a Florida corporation, Syed T. Hussain a/k/a Sam Hussain, Individually, and Heather Ann Hussain, Individually, as follows:

(a)      awarding TracFone its compensatory, consequential, statutory, special, treble, and punitive damages including, without limitation, its lost profits, loss of goodwill and damage to its reputation, as provided by law, together with pre and post-judgment interest;

(b)      awarding TracFone restitution of all money and property unlawfully and unfairly taken by Defendants through their unfair and unlawful conduct;

(c)      awarding TracFone permanent injunctive relief against Defendants enjoining Defendants from engaging in the unlawful practices described in this Complaint;

(d)      requiring Defendants, pursuant to the Lanham Act, to deliver their entire inventory of phones bearing or infringing any of the Marks or a confusingly similar copy thereof, to TracFone;

(e)      awarding TracFone its reasonable attorneys' fees and costs of this action; and,

(f)      granting such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff TracFone hereby demands a trial by jury on all triable issues.

DATED this  23rd  day of June, 2010

Respectfully submitted,

By: _____
Steven J. Brodie (FL Bar #  333069)
Aaron S. Weiss (FL Bar #  48813)
**CARLTON FIELDS, P.A**
100 Southeast Second Street, Suite 4200
Miami, Florida  33131
Telephone No. (305) 530-0050
Facsimile No.   (305) 530-0055
Email:  sbrodie@carltonfields.com
         aweiss@carltonfields.com

James B. Baldinger (FL Bar #  869899)
525 Okeechobee Boulevard, Suite 1200
**CARLTON FIELDS, P.A**
West Palm Beach, Florida  33401
Telephone No. (561) 659-7070
Facsimile No.  (561) 659-7368
Email: jbaldinger@carltonfields.com

*Attorneys for Plaintiff TracFone Wireless, Inc.*

16978227.4